IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| MARVIN D. PHILLIPS, <br> TDCJ-CID No. 2069253, <br><br> Plaintiff, <br><br> v. <br><br> BOBBY LUMPKIN, *et al.*, <br><br> Defendants. | § § § § § § § § § § § § § | 2:23-CV-00185-Z-BR |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION TO DISMISS COMPLAINT**

Before the Court is the Complaint (ECF 3) filed by Plaintiff Marvin D. Phillips ("Phillips") against various Defendants, alleging violations of his civil rights. Phillips filed this lawsuit *pro se* while a prisoner at the Clements Unit of the Texas Department of Criminal Justice ("TDCJ") in Amarillo, Texas, and has been granted permission to proceed *in forma pauperis*. As such, his lawsuit is subject to preliminary screening as provided by the Prison Litigation Reform Act ("PLRA"). Pursuant to such screening and for the reasons stated below, the Magistrate Judge recommends that Phillips' Complaint be DISMISSED as frivolous pursuant to 28 U.S.C. §§ 1915 and 1915A.

**I. STANDARD OF REVIEW**

A court must dismiss a complaint filed *in forma pauperis* by a prisoner against a government entity or employee if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B) (2017); *see also* Section 1915A(b) (applying section to any suit by a prisoner against certain governmental entities, regardless of

whether the prisoner is proceeding *in forma pauperis*). A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint has no arguable basis in fact if it rests upon clearly fanciful or baseless factual contentions, and similarly lacks an arguable basis in law if it embraces indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005). When analyzing a prisoner's complaint, the court may consider reliable evidence such as the plaintiff's allegations, responses to a questionnaire, and authenticated prison records. *Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991); *see also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (explaining that responses to a questionnaire or testimony given during an evidentiary hearing are incorporated into the plaintiff's pleadings).

In evaluating the sufficiency of a complaint, the court accepts well-pleaded factual allegations as true, but does not credit conclusory allegations or assertions that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). While courts hold *pro se* plaintiffs to a more lenient standard than attorneys when analyzing complaints, such plaintiffs must nevertheless plead factual allegations that raise the right to relief above a speculative level. *Id.* (*citing Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)).

## II. LEGAL ANALYSIS

**A.    Factual Background.**[1]

On November 15, 2019, Phillips was working in the maintenance department at the Clements Unit when he fell from a ladder. He suffered a compound fracture of both the tibia and

---

[1] These background facts are taken from Plaintiff's Complaint (ECF 3) and questionnaire responses (ECF 19), and are assumed to be true for the purpose of evaluating the merits of Plaintiff's causes of action.

fibula of his left leg. (ECF 3 at 4). He was taken to Northwest Medical Center in Amarillo, Texas, where Defendant Timothy Risko ("Risko") was the surgeon who set his leg, using external rods to hold the bones in place. After Phillips spent some time healing at the Clements Unit, Risko removed the rods and performed a stress test. Satisfied with the results, Risko attached plates to the bones. (ECF 3 at 4).  Phillips then returned to the Clements Unit infirmary, where it was later discovered that his leg had become badly infected. (*Id.*) He then underwent another surgery to deal with the infection and prevent amputation of his left foot. (ECF 19 at 2).

Phillips filed this lawsuit on November 13, 2023, alleging a variety of constitutional violations stemming from the medical care he received after his injury. (ECF 3 at 4-5). Specifically, he claims that Risko did not allow other medical staff to remove the bandages from his leg after the plates were inserted and that, had the bandages been removed earlier, the leg infection would have been discovered earlier. (ECF 19 at 2-3). Defendants Maria Carrizales ("Carrizales") and Mary C. Ellis ("Ellis") were nurses who attended to him daily during his recovery. They took his vital signs, administered medications and changed the dressing on his incisions when needed. (ECF 19 at 4-6). Phillips claims that they should have sought the source of his excessive pain before a wound-vac was needed to treat him. (*Id.*). Defendants Judith Thomas ("Thomas") and Benjamin Leeah ("Leeah") are doctors who were not involved in his daily care, but had access to his medical records and had "full knowledge of what [Phillips] was going through." (*Id.* at 7-8). He claims that he notified Thomas and Leeah of his high level of pain and that they should have investigated further and discovered the infection that was the source of his excessive pain. (*Id.*).

**B.      Claims Against Defendants in their Official Capacities.**

Phillips sues Defendants in their individual and official capacities. (ECF 19 at 10). Claims

3

against Defendants in their official capacity are without merit in that they are simply another way of suing the TDCJ, and therefore the State of Texas. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity therefore should be treated as suits against the State."). It is well established that suits for monetary damages against state officials in their official capacities cannot succeed under Section 1983. *See Almond v. Tarver*, 468 F. Supp. 2d 886, 892-95 (E.D. Tex. 2006) (collecting authorities and holding that claim against state official in his official capacity was barred by sovereign and Eleventh Amendment immunities). In addition, state officials acting in their official capacities are not "persons" under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989). Therefore, the claims against Defendants in their official capacities should be dismissed.

C.   **Claim Against Defendant Collier.**

Phillips alleges that Collier violated his constitutional right to be free from cruel and unusual punishment by placing him "under the supervision of a maintenance boss/technician who did not uphold the proper standard of supervision." (ECF 19 at 1-2). It is well established that supervisory officials such as Collier are not liable for the acts of their subordinates unless they: (1) affirmatively participated in an act that caused a constitutional deprivation, or (2) implemented an unconstitutional policy or custom that resulted in injury to the plaintiff. *Mouille v. City of Live Oak*, 977 F.2d 924, 929 (5th Cir. 1992) (citing *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987)). Supervisory liability exists without overt personal participation in an offensive act only if the supervisory official implements a policy "so deficient that the policy" itself is a repudiation of constitutional rights and is "the moving force of the constitutional violation." *Thompkins*, 828 F.2d at 304 (quotations omitted). Phillips alleges only that Collier placed him "under the supervision"

of a maintenance technician who did not properly supervise him, which presumably led to Phillips' injury. This is insufficient to state a claim against Collier. Phillips does not allege that Collier was personally involved in failing to treat his leg infection, nor does he allege that Collier created a policy or custom that violated Phillips' rights. Accordingly, the claims against Collier should be dismissed.

**D.     Claims Against Medical Providers.**

The Constitution requires that prison officials provide adequate medical care. *Rogers v. Boatright*, 709 F.3d 403, 409 (5th Cir. 2013). An inmate seeking to establish a constitutional violation regarding medical care must allege facts showing that prison officials were deliberately indifferent to his serious medical needs. *Morris v. Livingston*, 739 F.3d 740, 747 (5th Cir. 2014) (explaining that because "only the 'unnecessary and wanton infliction of pain' implicates the Eighth Amendment, a prisoner advancing such a claim must, at a minimum, allege 'deliberate indifference' to his 'serious' medical needs'") (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). Deliberate indifference "is an extremely high standard to meet." *Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009) (internal quotation omitted) and requires satisfaction of both an objective and a subjective component. *Rogers*, 709 F.3d at 410. An inmate must first prove objective exposure to a substantial risk of serious bodily harm. *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006). As to the subjective component, an official acts with deliberate indifference only when he (1) knows the inmate faces "a substantial risk of serious harm" and (2) "disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Gobert*, 463 F.3d at 346; *see also Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999) (per curiam) (stating that prison official is not liable for denial of medical treatment unless he knows of and disregards an excessive risk to inmate health or safety).

5

An official's "failure to alleviate a significant risk that the official should have perceived, but did not, is insufficient to show deliberate indifference." *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001) (alterations and internal quotation omitted) (quoting *Farmer*, 511 U.S. at 838). "[D]eliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001). Instead, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Brewster*, 587 F.3d at 770 (quoting *Farmer*, 511 U.S. at 837); *see also Lawson v. Dallas Cnty.*, 286 F.3d 257, 262 (5th Cir. 2002) (holding that deliberate indifference is a "subjective inquiry," and inmate must show that the prison official was actually aware of risk of harm and consciously ignored it).

Allegations of malpractice, negligence, or unsuccessful treatment fail to establish deliberate indifference. *Gobert*, 463 F.3d at 346. Similarly, an inmate's disagreement with the medical treatment provided does not give rise to a constitutional claim. *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). Further, a delay in delivering medical care creates constitutional liability only where the alleged deliberate indifference results in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993). In sum, an inmate must demonstrate that prison staff "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs" to state a viable Eighth Amendment claim for deliberate indifference to serious medical needs. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

The Court examines Phillips' claims against each Defendant as they relate to specifically identified events; however, the Court notes at the outset that Phillips' medical records show he

"was afforded extensive medical care by prison officials" during the relevant period. *Norton*, 122 F.3d at 292; *see Banuelos v. McFarland,* 41 F.3d 232, 235 (5th Cir. 1995) ("Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference."). The records establish that, from the date of his injury, medical personnel regularly visited with Phillips to address not only the initial injury, but also the resulting complications, regularly prescribed him pain medication and/or antibiotics, referred him for treatment once the infection was discovered, provided him with multiple medical passes, and worked extensively with him on pain management. For this reason alone, Phillips' claims of deliberate indifference are subject to dismissal. *See, e.g., Montes v. McAdam*, No. 5:14-CV-005-C, 2014 WL 5454843, at *3 (N.D. Tex. Oct. 27, 2014) ("The type and frequency of medical care shown in the authenticated medical records ... show that physicians have been responsive to [plaintiff's] complaints and have addressed them with medication and other forms of treatment and accommodation."); *Chavez v. Univ. Med. Ctr.*, No. 5:06-CV-157-BG, 2006 WL 8448187, at *2-3 (N.D. Tex. Dec. 22, 2006) (concluding that "authenticated medical records" "rebut [plaintiff's] claim of deliberate indifference" because they showed "that medical personnel provided him with ongoing and consistent medical care"); *Banuelos*, 41 F.3d at 234 (acknowledging that dismissals may be based on adequately identified or authenticated records). Nevertheless, the Court evaluates each claim in turn.

    **1.**     **Claims Against Risko.**

Phillips states that Risko was the surgeon who operated on his leg, after which his leg became infected. (ECF 19 at 2). The infection led to Phillips suffering severe pain and needing another operation to prevent his left foot from being amputated. (*Id.*). He claims that Risko did not let medical staff remove his bandages, which prevented staff from discovering the infection earlier

than they did. (*Id*.).

Phillips has not alleged facts showing that Risko was deliberately indifferent to Phillips' serious medical needs. Specifically, he has not alleged facts showing that Risko was aware of Phillips' leg infection and deliberately failed to treat it, nor has he alleged facts showing that Risko intentionally prevented other medical professionals from treating a known infection. At best, a liberal construction of Phillips' allegations might state claims for negligence, which fails to implicate the constitution. *See Gobert*, 463 F.3d at 346; *Casher v. Melton*, No. 1:14–CV–00120–C, 2015 WL 3541476, at *4 (N.D. Tex. June 2, 2015) ("Negligence or medical malpractice does not amount to a constitutional violation."); *Martikean v. United States*, No. 3:11–CV–1774–M–BH, 2012 WL 1986919, at *5 (N.D. Tex. Apr. 6, 2012) ("A failure to provide additional treatment may show medical malpractice, but it does not show deliberate indifference because decisions to provide additional treatment are matters of medical judgment."), *adopted by* 2012 WL 1992111 (N.D. Tex. June 4, 2012). Phillips has failed to state a constitutional violation by Risko. Accordingly, his claims against Risko should be dismissed.

### 2. Claims Against Carrizales and Ellis.

Phillips states that nurses Carrizales and Ellis treated him daily after his surgery. They took his vital signs, administered medications and changed his wound-vac dressing when needed. He claims they were deliberately indifferent to his medical needs because they did not seek the source of his pain before the wound-vac treatment was needed. He states that, had they removed his bandages earlier, they would have seen the infection and "showed proper medical attention." (ECF 19 at 4-6). In short, Phillips alleges that Carrizales and Ellis improperly delayed treatment that would have discovered his leg infection.

"[D]elay in medical care can only constitute an Eighth Amendment violation if there has

been deliberate indifference [that] results in substantial harm." *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006) (per curiam) (alterations in original) (quoting *Mendoza*, 989 F.2d at 195). Assuming that the delay in discovering Phillips' leg infection resulted in substantial harm, Phillips nevertheless has not shown that the delay was due to the deliberate indifference of either Carrizales or Ellis. Phillips does not allege that Carrizales or Ellis refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in conduct that would clearly evince a wanton disregard for his serious medical needs. As such, he has not shown that they were deliberately indifferent to his medical needs such that he has stated an Eighth Amendment claim against them. *See Johnson*, 759 F.2d at 1238.

Phillips' claims against Carrizales and Ellis amount solely to dissatisfaction with the medical treatment he received, rather than their outright refusal to provide treatment. *See Winston v. Stacks*, 243 F. App'x 805, 807 (5th Cir. 2007) (per curiam) ("[Prisoner's] dissatisfaction with the treatment he received is insufficient to state a constitutional claim."); *McQueen v. Karr*, No. 02-10553, 2002 WL 31688891, at *1 (5th Cir. Oct. 29, 2002) (per curiam) (affirming dismissal of prisoner's claim based on "dissatisfaction with the treatment offered him"); *Johnson v. United States*, No. 3:18cvl76-TSL-RHW, 2020 WL 4496752, at *4 (S.D. Miss. June 29, 2020) ("A prisoner's dissatisfaction or disagreement with medical treatment does not establish a constitutional violation."), *adopted by* 2020 WL 4493137 (S.D. Miss. Aug. 4, 2020); *Garrett v. Sulser*, No. 6:17cv310, 2019 WL 8500862, at *7 (E.D. Tex. Nov. 4, 2019) (concluding that complaints alleging medical personnel "merely performed a 'cursory' examination" were nothing more than "disagreement and/or dissatisfaction with the medical treatment he received"), *adopted by* 2020 WL 562804 (E.D. Tex. Feb. 5, 2020); *Shipley v. Statton*, No. 1:08–CV–133–C ECF, 2009 WL 1469716, at *4 (N.D. Tex. May 27, 2009) ("[Plaintiff's] dissatisfaction and disagreement with

the [care provided] ... does not demonstrate that he was denied treatment.").

In sum, Phillips cannot show deliberate indifference because "it is clear that he was seen when he requested treatment and that the [medical personnel] who saw him attempted to provide several remedies" for his condition. *Fails v. DeShields*, 349 F. App'x 973, 976 (5th Cir. 2009) (per curiam); *see Wiggins v. Zein*, 108 F. App'x 148, 149 (5th Cir. 2004) (per curiam) (finding no constitutional violation where inmate "received treatment for his knee injury, including pain medication, x-rays, ice packs, Ace bandages, and crutches"). Phillips admits that he was treated daily, he was given medication, and his vital signs were monitored. He simply disagrees with the extent of the treatment he received. As a matter of law, this does not constitute deliberate indifference. Phillips' claims against Carrizales and Ellis should be dismissed.

### 3. Claims Against Thomas and Leeah.

Phillips next alleges that physicians Thomas and Leeah "had knowledge" of his situation, and that, although they did not see him daily, they were involved in his care. He claims that they should have investigated his situation further, because they knew he was in severe pain after his surgery and they had access to his medical records. (ECF 19 at 7-9).

As noted above, an official's failure to alleviate a significant risk that the official should have perceived, but did not, is insufficient to show deliberate indifference. *See Domino*, 239 F.3d at 756. The official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837). Phillips alleges no facts showing that either Thomas or Leeah was actually aware that his leg was infected and consciously ignored it. Even if Thomas and Leeah should have realized that Phillips' leg was infected, such failure does not show deliberate indifference and, thus, does not state a constitutional violation. Phillips' claims against Thomas and Leeah should be dismissed.

**E.      Leave to Amend.**

Ordinarily, a *pro se* plaintiff should be granted leave to amend his complaint prior to dismissal. *Brewster*, 587 F.3d at 767-68. The district court is not required to allow such an opportunity, though, if the prisoner's claims are clearly frivolous, *Eason v. Thaler*, 14 F.3d 8, 9 (5th Cir. 1994), or if the prisoner has pled his best case in the current complaint. *Mendoza-Tarango v. Flores*, 982 F.3d 395, 402 (5th Cir. 2020). Phillips has fully responded to the Court's questionnaire and thoroughly explained his claims. It appears clear that, while Phillips suffered unfortunate complications with his broken leg, such complications were not a result of deliberate indifference by any of the Defendants and thus do not give rise to a constitutional violation. Phillips has pleaded his best case; therefore, leave to amend is unnecessary.

## RECOMMENDATION

For the reasons stated above, the Magistrate Judge concludes that Phillips' claims should be DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and that Phillips be issued a strike within the meaning of 28 U.S.C. § 1915(g).

## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Findings, Conclusions and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED November 20, 2024.

*[signature]*
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

11

## *  <u>NOTICE OF RIGHT TO OBJECT</u>  *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276–77 (5th Cir. 1988).